15 minutes per side Mr. Andrew Biller for the appellant. Good morning. Good morning. May it please the court, my name is Andy Biller. I along with my co-counsel Larry Noll represent the appellant in this matter Donna Craig. I'd like to reserve four minutes if that's all right. Very well. If the Sixth Circuit allows the employers just play dumb and you don't have to pay your employees minimum or overtime wages. Ms. Craig isn't asking for anything special in this case, just a little bit of common sense. When you work overtime hours, you record those hours on the employer's timesheets, you give those timesheets to your employer for the employer's approval, you got to be paid for your overtime hours. The Fair Labor Standards Act allows no other option. When we talk about common sense, we're talking about acting with reasonable diligence. As other circuits have held, employers must act with reasonable diligence when it comes to knowing whether their employees are working overtime hours. She knows what the law is. I mean, she's an experienced bookkeeper, right? No. No? Well, she's an experienced bookkeeper. She testified she did not know who is entitled to overtime wages under the appellant. She doesn't know what the overtime law says. Is that, okay, that's her testimony, but let's assume she does. It doesn't matter. Well, they argue that she did know, I think, and that because she had knowledge and did not submit it as time and a half that she, in effect, waived her claim of overtime. I think that's what the argument is. You're saying that she did not know the law. Is there any There is. In her deposition, she testified she didn't have specific knowledge as to who is entitled to overtime wages. She also testified that she only learned that you get time and a half by doing other people's, other employees at Bridges Brothers' time. She was instructed by Bridges Brothers that these certain people, union employees and one mechanic who requested overtime, were to be paid overtime. But you're right. You nailed exactly what the employer's argument is. She did something that waived her right to overtime. And it's well established that you cannot waive your right to overtime, minimum wages or liquidated damages. Judge Kethledge said that in Boas v. FedEx. When we talk about reasonable diligence in this case, it means actually looking at the time Ms. Craig to hand in for the admitted purpose of the employer keeping track of her time. Reasonable diligence means knowing what's on your own payroll records. Now Bridges Brothers claims that it didn't know about Ms. Craig's overtime hours, but Ms. Craig's time sheets and payroll records are Bridges Brothers' knowledge. Under the Fair Labor Standards Act, Bridges Brothers was required to keep records of her hours worked and wages paid. When an employer does that, when they keep accurate records, an employee may easily discharge their burden to prove uncompensated hours by producing those records in Anderson v. Mount Clemens. So I mean what what she did here was, I mean she recorded all of her time, but she also, I guess for each employee, was calculating the payment owed. And in calculating her payment, she didn't do time and a half for her overtime hours. That's correct. That's on the time sheets. Right, right. And so the question is whether that somehow threw the employer off here. That's, yeah, that is the question. So Ms. Craig produced those time records with her wages and her time. She followed the Supreme Court's instructions. The trial court ignored that evidence and ignored the instruction from Anderson. Was she the employee that determined whether other employees got time and a half, got overtime pay, or was that her supervisor? No, her, yeah, her boss tells her who to pay, what to pay. She doesn't set hours. She doesn't set pay rates. She just calculates. She does the math. That's what she does as the bookkeeper. But she testified that she wouldn't violate the law. I mean if she knows that a co-employee is entitled to overtime, even if the employer said we only give non, or we only give union employees overtime, we don't give non-union employers any overtime for over 40 hours. I mean if she knew that was violating the law, she wouldn't violate the law, would she? I wouldn't think so. And if you look at the record, she says toward the conclusion of her employment, if you take away my assistant, I'm going to have to work overtime hours, and I'd like to be paid at overtime rate for that. Yeah, and then she gets terminated. Then she gets terminated. But that indicates she didn't know until that point she was supposed to be paid overtime. When she figured it out, she said, yeah, I'd like to be paid overtime. She testified that Mr. Bridges told her the names of the five people that were eligible for overtime, is that right? That's right. And she wasn't among them. Does she have any legal training or anything like that? No. She has a high school diploma, and the record says she has some college education. So no, she has no training. But even if she did, it's still the employer's responsibility to ensure FLSA compliance. The trial court based its decision on the mistaken belief that Ms. Craig didn't follow Bridges' brother's timekeeping procedure. But number one, that's a fact question as to whether she followed the procedure or not. But two, if the court adopts that position and it hasn't to date, then Fair Labor Standards Act compliance becomes the employee's responsibility. That's never been the case, and it's directly contrary to the letter and spirit of the FLSA. Well, the employee is not permitted to hide the ball either. Isn't that true? That's absolutely true. That's right. So there's a certain sense of responsibility on the part of an employee in this regard to be forthcoming, and that might have some bearing on the behavior of your plaintiff here, right? Yes. Under this court's decision in white, an employee may not prevent an employer from learning about overtime hours. But an employee's actions only matter if the employer didn't already know or should have known. It doesn't matter what the employee did. She could have said, I'm specifically trying to avoid being paid overtime and I'm going to hide it. If she's not successful in hiding it, that would be a bizarre scenario. But if she's not successful and the employer knows or should have known anyway, it doesn't matter what she did. Well, if she had under-reported her hours. She works nine hours one day, she puts down eight, you know. No, that's not correct. What? She accurately reported. No, if she had done that. Oh, yeah, that's the situation in white. And that's a white situation for sure. Right. Unless the employer knew or should have known from another source in the exercise of reasonable diligence, then yeah, that's the white scenario. I think there's some tension between the should have known standard and the kind of responsibility of the employee to be forthcoming here. No, I don't think that there is. I think that the should have known standard is what gives you a should have known standard. Without some baseline level of conduct, you really shouldn't know anything. If the employee in question is the one who is producing or compiling records that are presented to the employer to provide a foundation for the should have known standard, there's either some circularity or at least some tension in the analytical framework, it seems to me. Well, we know that it's always the employer's responsibility to ensure FLSA compliance. In this case, Ms. Craig gave the employer her payroll records which show her hours and wages. So I think here's the key question. Did Ms. Craig do anything in this case that would have prevented her employer from learning about her wages and hours? The answer is of course not. She handed that information to the employer every week on the payroll records. Nothing prevented Bridges Brothers from looking at those records. And in fact, reasonable diligence requires that they would have looked at their records. Now, the briefs discuss various fact disputes, so I don't want to get much into those except to point out one small but very important point. Okay, before you move on to that, you mentioned a previous fact dispute. The first issue in your brief, though, is you argue that the trial court erred in not granting you summary judgment. I mean, do you concede today that there are factual disputes and that, therefore, you are not entitled to summary judgment? No, not with respect to granting us summary judgment because the facts underlying that request are not in dispute. She worked the overtime hours. She recorded the hours on the employer's timesheet. She gave those timesheets to the employer for the employer's approval. So nothing would have prevented a reasonably diligent employer from knowing about her overtime hours. In fact, those records are the employer's knowledge. So with those not in dispute, we are entitled to summary judgment. So all the factual disputes are on the other side then? They are on whether Bridges Brothers had actual knowledge and, you know, there are some fact disputes that we talk about in the brief that would prevent summary judgment being granted against Ms. Craig. The rule would be where records, even in the form presented here, are made available, presented to the employer. That's a dunk. Yeah. The rule we are advocating in this case, it's common sense, it's simple, it's consistent with this circuit's opinions, other circuits' opinions, and the Supreme Court's instruction in Anderson. And the rule is this. If an employer has reason to know about an employee's overtime hours, if those hours are recorded on the employer's payroll records. It's that simple. That fact issue that I wanted to mention, Bridges Brothers admits that it glanced at the payroll records on payroll day. I'm using that term glanced because that's their word, but they looked at them. And Bridges Brothers in the 30B6 deposition had this to say. Now, if someone did something inside payroll that maybe shouldn't have, comma, working overtime, comma, or put down something they shouldn't have, then I will get those sheets and look at them. The trial court ignored the fact that Bridges Brothers admitted it looked at these time sheets. That alone raises a fact question as to whether the employer had actual knowledge. So it prevents summary judgment from being granted against Ms. Craig. That fact alone. Your light's on. I don't mean to interrupt. I'll leave it there and I can tie it up in my rebuttal. You have your four minutes rebuttal unless there's any other questions. I'll keep an eye on it. Good morning, Your Honors. I'm Dan Clark on behalf of the Appellee Bridges Brothers Trucking. I want to address a few points Mr. Biller raised, but I think the most important fact here is that the only reason that Ms. Craig wasn't paid for these overtime hours is because she made the choice on her own without any instruction from her employer to not record the hours that she wrote on her time sheets into the company's payroll system. Didn't the son tell her to move that extra hour and a half into the following week or following month? Wasn't that an instruction from a responsible party on the employer's side? On adjusting hours? Yeah. I was like, don't go more than 40 hours in this week. What was it, an extra hour and a half or something like that? Move that to the next week. Pretend that you worked 30. That sounds like a direction from the employer to me. The hours at issue are the hours that Ms. Craig recorded on her time sheet where she would write two hours worked at home and then as with all Bridges Brothers employees, they turn their time sheets in to Ms. Craig. So she's turning her time sheets in essentially to herself and then she sits down and inputs those hours into the payroll system. That payroll system then generates the paychecks to the employees at the end of the pay period. The payroll records, Bridges Brothers payroll records reflect not the notations that Ms. Craig would make at home or wherever she's doing this work on the time sheet that she held. It was in the payroll records that she created in the company's payroll system. So when she takes... Let me ask you a question. I mean it is true or at least at this stage of the case we must take as true the testimony that Mr. Bridges, the older Bridges instructed Ms. Craig that five people were eligible for overtime, right? Her testimony was that he told her, he identified some people that should get overtime. Right. She was not among them. There is not testimony that that instruction was those are the only people or that you are not to. Okay and one could argue about that I suppose at trial. But she's instructed these five people are eligible for overtime. She's not among them. She doesn't have any labor law background or anything like that I presume, right? So I mean what is she doing wrong at least in terms of following instructions when she calculates the payments that are owed consistent with the employer's instructions? Sure and this goes... What is she doing wrong? Her argument is I didn't know to do it differently. Right. Why would she know? Well I think the evidence reflects that she did know. One, she paid overtime to other employees and there's no indication that any other on one occasion when she chose to record the overtime hours, put them in the payroll system, they were paid. So she knew to do it. That was at the very, very end. That was towards the end, yes. Additionally, when I asked her at her deposition, you know, why did you put two hours down on a time sheet but then when you're totaling it up, write down zero? And her testimony, it's on page 411 of the record, was I did it because I didn't think the company could pay the extra money. That is somebody making... That's not... I didn't know to put the time down. I didn't think I had to. I didn't think I was eligible. I'm deciding not to do it. Let me ask you, I mean, my understanding, and please correct me if I'm wrong, is that she was putting in the actual numbers of hours that she worked but that she was not in the payment column crediting herself for time and a half for the hours above 40 per week. Is that accurate? I think there are... It's partially accurate. There are some days where she recorded the hours correctly but then did not calculate the rate at the overtime rate. There are additional hours of days where she claims she worked outside the office. I think one was at home and another at her son's soccer practice. She was doing some work there. Recorded that on a time sheet and noted, you know, I did this work but zero hours. So there are essentially two different mistakes. I mean, just briefly, so it's... You agree the standard here is whether your client knew or should have known she was working overtime, right? Not exactly. I think it is... And the White decision addresses this. The question is... Well, I'm talking about the CFR reg. That's what it says, right? It's known or should have known that the employee was not recording the time properly. Here we have when the employer has a process for recording the time. Okay. It's whether the employer knows or has reason to believe that the employee is working more than 40 hours a week, right? Yes. Okay. And so the question is whether a jury could so find here. And here we have payroll records, at least some of which, if not most of which, show that she is, in fact, working more than 40 hours a week. I mean, granted, you would have to look at the hours. You would have to look at these. But if you look at them, it's, you know, on its face. There it is. Number two, we have the email, June 1, 2011, from the younger Bridges to the older Bridges, where he says, like in capital letters, she needs to stop working weekends and working overtime, right? Yes. Why isn't that... I mean, let's just stop there. Why doesn't that go to trial right there, game over? The expectation for Ms. Craig throughout her employment was that she was not working overtime. And the one statement from Mr. Bridges to her was, you don't need to be working overtime. But that email totally... I mean, correct me if I'm wrong, but that email on its face reflects knowledge that, in fact, she has been working overtime. Maybe they didn't want her to work overtime. That's a different issue. But it shows knowledge that they're working... actual knowledge that she's working overtime. No more Sundays and Saturday. Capped only 40 hours a week. If she can't finish it during the week, then wait until all caps Monday. Surely a jury could look at this and say they knew she was working more than 40 hours a week. There was a conversation between Mr. Bridges and Ms. Craig where she said, I can't get all my work done. And his response to her was not, I'm not paying you overtime or you're not eligible for overtime. It's, you should not be working overtime. I'm kind of focused on this email. I mean, why doesn't this email itself create a genuine issue as to whether they actually knew, not just should have known, actually knew she was working more than 40 hours a week? Specifically, why doesn't this email do that? That reflects her indication that her statement to the company that she felt her work required that and the company's decision not to tolerate that. That doesn't sound like it matters. I mean, this statute is like a strict liability statute. It does matter when the employer creates a process, asks the employee to accurately record their time. That goes into the payroll system and that's what's used to generate the paycheck. The time was accurately recorded, wasn't it? It was just it wasn't computed at time and a half. By Ms. Craig herself who made the decision not to do that because she didn't think the company could pay it, not because she was told not to. She was making a choice for herself to hide. You work for a struggling company and you are working overtime. Despite the economic circumstances of the company, you're still entitled to it, right? Yes. Even if the company would prefer that you get it done in 40 hours, if you work 48 hours and the employer knows or should have known that you're doing those extra hours, even though they want you to do it in 40 hours, they've got to pay you, right? Absolutely. This is not a struggling company. This was a company that was growing significantly throughout Ms. Craig's employment. The standard, though, is should have known, not could have known. Or actually knew would suffice as well. I'm sorry? Actually, you know, that they knew would suffice. I mean, this statute makes it easy for us. The only thing that matters is did she work the 40 hours and under White, you know, did she not hide the fact that she worked the 40 hours and did they have reason to know she was working the 40 hours? Beyond that, if she doesn't want the money, if she can't waive her entitlement, the employer can't get out of it otherwise. It's really simple. And I have to say, I look at this email from the principals of the company and you look at that and you look at there's some other testimony, I think, from the older Mr. Bridges that he saw her there working on weekends. The younger one says dad's going in on the weekends to sort of babysit her when she's there. I mean, clearly it would seem a jury could find that she's working more than 40 hours a week. It's $6,000 in dispute. I really am scratching my head, frankly, like how we're having this argument about this. And what am I missing here? I mean, it's simple. A jury could say they knew. I guess obviously I disagree that the jury could make that finding given Ms. Craig's responsibility for generating her own paychecks. Why does that matter? Why is the awareness of Mr. Bridges, why is that affected by the identity of the person who prepared the record? Mr. Bridges and Mr. Biller talked about they have to be reasonably diligent to figure out is overtime due and should it be paid? Well, Mr. Bridges hired Ms. Craig to do that diligence. So you say it's a delegable responsibility under FSLA? Not with respect to the truck driver who diligently turns in his time sheet, accurately records his time, and if Ms. Bridges gets that and says it wasn't a good month, I'm not paying Dan, the truck driver, overtime. Then the company can't escape that because the employee did everything properly to get the overtime paid to them. So you're saying then that the burden is on the employee, not the employer? When it's the employee's actions or inactions that result in the overtime not being paid, then yes. Where in that analysis does the employer's responsibility to be reasonably diligent fit in? White describes that the employer needs to have a reasonable process by which the employees can report their time to the company that will result in the overtime being paid. There was such a process in place here. Ms. Craig was in charge of that process. She administered it adequately for all the employees except for herself, and she made a decision to alter the rate of pay or to not input the hours from her time sheets that she recorded into the company's payroll system. But White doesn't say that when there is evidence that an employer had actual knowledge that somebody is working more than 40 hours a week, additional evidence that the employee departed from the payroll process in some fashion means no liability for the overtime pay. I mean, there wasn't evidence in White like we have here that they actually knew, themselves actually knew. I guess I just disagree on that email is a response to the conversation that Ms. Craig did have where she was expressing frustration. I'm not getting my work done. Now, she wasn't getting her work done because she was doing other work for other companies while she was at White. I mean, we have to look at this in light most favorable. He says, Donna, no more Sundays and Saturdays. Cap only to 40 hours in the month of June. No more. I mean, even if we're going to try to read it the way you're suggesting, more suggests there has been some already. Certainly, the record reflects that she worked some Sundays and Saturdays. Her testimony also reflects that she took time off during the week. She was the only bookkeeper, so she could work. She didn't have a set schedule. Her son was in a travel soccer league, and she took time for that. So her schedule was not a fixed 9 to 5 job, Monday to Friday, such that any Saturday and Sunday hours would necessarily involve over 40 in a work week. There was certainly frustration with Ms. Craig not getting her work done and not getting the work done and then coming in on the weekends to get caught up, and that was resulting, one, from her schedule. I understand. That is an undercurrent. There's a difference between knowing she's not getting her work done. This job isn't as hard as she seems to be making it. It shouldn't take her as much time. I know that the time she's putting in on her time sheets and using to process payroll is inaccurate. Frankly, one reading in this record is they know she's working the hours. They don't want her working the hours. They're unhappy about it, and they choose to deal with it by not paying her the overtime. They should have had a conversation earlier. I see my time is expiring. I appreciate your answers. Go ahead and respond. They could have, Mr. Bridges, if he had looked at the, could have gone through and audited the time sheets and said you're working those hours. He conceivably should have gone, if that's the standard, he should have gone through everyone's time sheets every week and see is the math being done right. Fair point. He didn't do that. And so if he had done that and said you're working too much time, I'm not paying you this overtime, that would clearly be different. The record here is he didn't do that work. He trusted that Ms. Craig had accurately reported her time, and that is why she wasn't paying the overtime. Thank you, Mr. Clark. Employer, you've got four minutes for a moment. You may not need it all. Yeah, Judge Kethledge asked a great question, which is why are we here over $6,000. Here's why this case matters. If this court lets Bridges brothers just ignore their own payroll records, then employees will be at a near total loss to ever prove uncompensated hours based on payroll records. That's exactly the opposite of the Supreme Court's instructions in Anderson. I'm not sure where that leaves employees, but I know what message it sends to employers. Just play dumb, and you don't have to follow the law. It rewards the worst businesses and punishes those good businesses that do act with reasonable diligence, because they'll be at a competitive disadvantage to businesses that just ignore the law and ignore what's going on in their own business. I want to address one quick point about if Bridges brothers didn't want her working overtime or whatever, the solution is discipline her. If they think she's not working all the hours she's working or whatever else, you discipline her. You don't not pay her. The Fair Labor Standards Act doesn't. Or you terminate her. Or you terminate her. That's how this case originated, was with her termination. And why do we have it for $6,000? I assume there's some bad blood going on here since the termination. Anyway, yeah, you terminate somebody if they're not. Well, she was terminated for insubordination. Insubordination is not doing what they tell you to do. And one thing they said, don't work more than 40 hours. If she's working more than 40 hours, she's not doing the employer's directions and insubordinate and fire her on that basis. Yeah, that's exactly right. If that's the reason they fired her, then. On that point, is it feasible under these circumstances like this where a bookkeeper pretty much has not a 9-to-5 job? You agree with that. It's a flex work schedule sort of a situation, modern era, 21st century flexibility, right? So is it actually even feasible for an employer to say, don't work more? When you get to 40 hours, stop. Is that a legitimate position any longer? Yeah, absolutely. An employer can say that. And if an employee does something other than follow that instruction, then all you have to do is look at the time sheets to find out. The other thing is management people are not governed by this, are they? I mean, they could make her a management employee, give her a salary rather than hourly. I mean, there are ways to get around it. There are ways to get around it. That may not have applied here because she was a low level. She's not an accountant. She's just the bookkeeper calculator. Whatever. But, yeah, yes, that's absolutely right. We'll report your agreement to the Department of Labor that's trying to upend that proposition. Yeah, but I've had cases like that. They've alleged that the companies have made people managerial when they should have been hourly to actually avoid this time and a half thing. And I've had a couple cases like that. So I know that it's been done. Whether it's legal or not, I can't tell you. There was an attack, I believe. Yeah. A re-regarded action. If there are no other questions, I'll just end with. All right. Thank you. End with. Go ahead. We ask that you grant summary judgment to Ms. Craig. That's very important in this case. The evidence is on the payroll records. That's the employer's knowledge. All right. Thank you very much, Mr. Miller. Case will be submitted. You may call the next case.